IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Richard P. Matsch

Civil Action No. 13-cv-02199-RPM

TERESA M. BAKKE,

    Plaintiff,

v.

KING SOOPERS, INC.,

    Defendant.

## ORDER GRANTING SUMMARY JUDGMENT

In August 2012, Plaintiff Teresa Bakke was the assistant store manager of King Soopers Store #132 in Castle Rock, Colorado. She had a conversation in her office with Karlie Hanson, a front end supervisor at the store, concerning Felix Vega, a store employee. In her deposition testimony, Ms. Bakke gave this account of that conversation:

> [Karlie] came into the office and said, I need to talk to you about something. I was like, oh, okay, sit down, Karlie. And she goes, I've talked to my mom, and I think she told me she talked to Norma[1], and she goes, well, you promise you can't tell anybody because we'll get in trouble. I was like, well, no, I can't promise you that. She goes, Felix came in last night and said don't tell anybody I'm here. And he went upstairs and she said he was there until she left.
>
> I said, well, we got to tell someone because it's against the rules. I said, well, we could call Char[2], but Char likes Felix so she'll probably not do anything about it and they'll just brush it under the carpet. And she goes, well, I'm afraid to tell Walt.[3] I go,

---

[1] "Norma" is Norma Henry, another front end supervisor at Store #132.
[2] "Char" is Charlotte Baker, King Soopers' human resources coordinator for District 1, where Bakke's store was located.
[3] "Walt" is Harlan Walter, the manager of Store #132.

well, Walt's on vacation. I go, we can call Lynn[4] or we could call Kevin[5] or you could use the helpline.

  Q  (BY MR. DEENY) And did you show her the number?

  A  Actually, she went to the poster and looked at the number.

  Q  Okay.  To your knowledge, she used the helpline?

  A  She called me up and told me she did.

[Doc. 24, Ex. E at 65:25-66:23.]

In her deposition, Ms. Hanson gave her account of the conversation as follows:

  A  I had gone upstairs and I had said, I think I saw Felix working off the clock.  And then Walt had actually been on vacation; that's why I went to Teresa.  Teresa had told me to call the hot line because if she had gone to other management, then they wouldn't have done anything about it.

  Q  What else do you remember about that conversation?

  A  Um.  Just that she showed me where the number was, she told me to stay anonymous and don't say my name and don't tell anybody that I had called the hot line, but that's what the hot line was there for.

  Q  What else did you discuss?

  A  I think that was it.  Just about him working off the clock and call the hot line.

  Q  Is it your testimony, then, that Miss Bakke told you to report it to the hot line anonymously?

  A  Yes.

  Q  What do you remember about that?

  A  I just remember her saying that if she went to her upper management, then nothing would be done about it and that's why I should stay anonymous, just so that Walt didn't find out about it or anybody like that.

---

[4] "Lynn" is Lynn White, operations coordinator for District 1.
[5] "Kevin" is Kevin Olson, the manager of District 1.

[Doc. 24, Ex. H at 16:2-24.]

Ms. Bakke resigned her employment as assistant manager at Store #76 by a letter reading as follows:

> To: Donna Diiorio, Char Baker
>
> Regrettably, I must resign my position as an assistant store manager for King Soopers due to an intolerable work environment, effective as of July 30, 2013.
>
> From October 2012 to April 2013 I have complained, verbally and in writing, to Lynn White, Char Baker, Donna Diiorio, Stephanie Bouknight and Kevin Olson that I was being bullied, harassed and retaliated against since suggesting to Karlie Hanson that using the King Soopers sponsored anonymous help line was an option to report an employee's off-the-clock work.
>
> Despite my consistent and continued plea for help, King Soopers management chose to intentionally ignore my requests for help and encouraged the retaliation to continue. Donna Diiorio has continued to harass me while on FMLA including sending me registered letters demanding that I call her or I would be terminated.
>
> Sincerely,
> Teresa Bakke

[Doc. 24-12 at 32.]

In this civil action, Bakke claims damages for a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3), which makes it unlawful:

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

That claim fails because whether it was a suggestion or a direction given to Ms. Hanson to call the "helpline" to report her observation of Felix Vega, Ms. Bakke did not engage in an activity protected by § 215(a)(3). It is not clear that there was a violation of the FLSA. Ms.

Hanson was making an assumption and testified that she reported Vega to get him in trouble because he was competing with her friend for an open store position. [Doc. 24, Ex. H at 27:1-14.]

Assuming that there was a violation because Vega was working off the clock, the conduct of Ms. Bakke in referring Ms. Hanson to call the "helpline" does not come within the language of § 215(a)(3). There never was an FLSA complaint or proceeding resulting from Ms. Hanson's call. As the Defendant observed, with the store manager absent, Ms. Bakke was responsible for following her employer's policies and practices. She abdicated her duty.

In McKenzie v. Renberg's Inc., 94 F.3d 1478, 1486 (10th Cir. 1996), the Tenth Circuit Court of Appeals recognized that it had given an expansive interpretation of the statutory language to include unofficial assertion of FLSA right through complaints at work. The essential test is this:

> In order to engage in protected activity under § 215(a)(3), the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights,[8] or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.

Id. at 1486-87.

King Soopers' Motion for Summary Judgment may be granted on additional grounds. Bakke had many difficulties during the later part of her tenure with King Soopers. Store associates consistently complained about how Bakke treated them, and Bakke's supervisors told her on a number of occasions that her communication skills needed improvement. Bakke's superiors either refused to recommend her for promotions (Harlan Walter) or did not strongly endorse her candidacy (Kevin Olson). Bakke was transferred between stores twice

4

during the events in question: the first transfer was not to the store she desired, and the second was to a store roughly 40 miles from her home. It was after the second transfer that Bakke's relationship with King Soopers irrevocably soured. Without diminishing these difficulties, King Soopers has articulated legitimate business reasons for its actions and Bakke's claim that those reasons are a pretext for unlawful FLSA retaliation is simply not plausible on this record.

Finally, this is a constructive discharge case and Bakke has failed to provide sufficient evidence showing that her working conditions were "so difficult that a reasonable person in [her] position would feel compelled to resign." EEOC v. PVNF, LLC, 487 F.3d 790, 805 (10th Cir. 2007) (quoting Sandoval v. City of Boulder, 388 F.3d 1312, 1325 (10th Cir. 2004)).

Upon the foregoing, it is

ORDERED that Defendant King Soopers' Motion for Summary Judgment [Doc. 24] is granted. The clerk shall enter judgment dismissing this civil action. King Soopers shall have its costs upon the filing of a bill of costs.

Dated: September 11, 2014

                                              BY THE COURT:

                                              s/Richard P. Matsch
                                              _____
                                              Richard P. Matsch
                                              Senior District Judge